## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

MARK C. SPICHER d/b/a      :
THE ARTWORK FACTORY      :
     :
     Plaintiff,      :
     :
v.      :    Civil Action No.
     :
THE ARTWORK FACTORY, S.R.O.      :
     :    Jury Trial Demanded
     Defendant.      :

## COMPLAINT

Plaintiff, Mark C. Spicher d/b/a The Artwork Factory, by and through his counsel, The Keller Law Firm, LLC and Tucker Arensberg, P.C., hereby states and avers the following Complaint against Defendant, The Artwork Factory, s.r.o.:

1. This is a civil action brought pursuant to the Lanham Act 15 U.S.C. §§1051 *et seq.* (the "Lanham Act"), the Anticybersquatting Consumer Protection Act, 15 U.S.C. §1125(d) ("ACPA") and Pennsylvania statute and common law.

## Parties

2. Plaintiff, Mark C. Spicher ("Spicher"), is a sole proprietor doing business as The Artwork Factory, a business that, among other things, designs, manufactures, sells and distributes art, prints, photographs, vinyl flooring and floor cloths using the trademark THE ARTWORK FACTORY.

3. Upon information and belief, Defendant, The Artwork Factory, s.r.o.

("Defendant") is a Czech Republic entity that designs, manufactures, sells and distributes artwork.  Upon further information and belief, Defendant regularly conducts business within the Commonwealth of Pennsylvania, including without limitation in this district.

## Jurisdiction and Venue

4.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, §1332 and §1338 and 15 U.S.C. §1121(a).

5.     Venue is proper in this Court pursuant to, *inter alia*, 28 U.S.C. §1391(b)(2) and (3).

6.     All of the parties in this action are subject to the personal jurisdiction of this Court.

## Factual Allegations

## Spicher, its Products and its Marks

7.     Spicher entered into the business of designing, manufacturing, selling and distributing framed art in 1992, and has grown to become a leading creator and manufacturer of framed artwork products.

8.     Prior to 2011, Spicher used the trade names "Blueprint Artwork," "The Artwork Machine" and "Artwork Enclosed" with respect to its framed art products and branded and marketed its products differently according to distribution channel or retail outlet.

9.     In 2011, Spicher adopted the mark THE ARTWORK FACTORY for branding and marketing all of its framed art sold wholesale on the internet.

10.    THE ARTWORK FACTORY was selected and adopted by Spicher after considerable effort and investment, and was selected so as to convey to the consumer that Spicher is the creator and manufacturer of its own products and that distributors and consumers can thus buy framed art products direct from the creator and manufacturer of those products.

11.    THE ARTWORK FACTORY was selected and adopted by Spicher because it creates a compelling, meaningful, distinct and unique impression upon the consumer and builds greater value and goodwill in its business, including both wholesale and retail sales.

12.    Spicher offers its framed art products through a number of distributors and retail outlets, including Haute Look (an affiliate of Nordstrom), One Kings Lane, Pottery Barn, DotandBo.com, Wayfair, LLC ("Wayfair"), JossandMain.com (an affiliate of Wayfair), Amazon.com and Gilt Groupe.

13.    In addition to selling its products through distributors and retail outlets, Spicher markets and sells its products at its website www.theartworkfactory.com.

14.    Spicher has used THE ARTWORK FACTORY in interstate commerce in connection with the offer and sale of framed artwork products since

August 10, 2011, when it began to offer and sell those products at onekingslane.com.

15.    Spicher registered the domain theartworkfactory.com on or about March 9, 2011, and has used that domain since at least November 11, 2011 to market and sell its products in interstate commerce.

16.    On November 21, 2011, Spicher registered "The Artwork Factory" as a fictitious name with the Pennsylvania Department of State, Bureau of Corporations and Charitable Organizations.

17.    Since adopting the mark THE ARTWORK FACTORY and registering the trade name "The Artwork Factory," Spicher has made a substantial investment in advertising and marketing that name so as to create a distinct commercial impression on consumers.

18.    Spicher's investment in the mark THE ARTWORK FACTORY has caused that mark and Spicher's business to acquire significant goodwill and Spicher has developed a national reputation as a creator and distributor of framed art products using that mark.

19.    In addition to using THE ARTWORK FACTORY in the United States, Spicher uses that mark to offer and sell framed art products and floor cloths internationally, including in Europe, by way of its own website and through its distributors.

20.     On October 4, 2014, Spicher filed an application with the United States Patent and Trademark Office ("USPTO"), at Serial No. 86414983, seeking to register the words THE ARTWORK FACTORY as a United States trademark (the "Spicher Application").

21.     Spicher seeks in the Spicher Application to register THE ARTWORK FACTORY on the Principal Register in relation to (i) art pictures, framed art pictures, art pictures on canvas, art prints, framed art prints, art prints comprised of digital illustrations originating from photographs, graphic art prints, framed graphic art reproductions, photographs, photographs that have been computer manipulated and enhanced to look like paintings, mounted and unmounted photographs, printed paper signs, art prints on the reverse side of acrylic, and art prints on the reverse side of glass (International Class 016); (ii) vinyl flooring (International Class 019); and (iii) floor cloths in the nature of floor coverings (International Class 027).

22.     In the Spicher Application, Spicher represented that the words THE ARTWORK FACTORY were used by Spicher as a trademark in interstate commerce at least as early as January 2012 with respect to goods in International Class 016, and at least as early as September 2013 with respect to goods in International Class 019 and International Class 027.

23.     On January 2, 2015, the Spicher Application was approved for

publication and was published for opposition in the Trademark Official Gazette on March 3, 2015.

24.     On March 23, 2015, Spicher filed a second trademark application with the USPTO, at Serial No. 86573650, seeking to register THE ARTWORK FACTORY on the Principal Register for use with respect to the services of (i) graphic arts design, custom design and development of artwork (International Class 042); and (ii) alteration and retouching of photographic images and artwork (International Class 040).

25.     In the March 23, 2015 trademark application, Spicher represented that THE ARTWORK FACTORY was used in interstate commerce in the United States by Spicher as early as January 31, 2012 with respect to services in International Class 042 and as early as April 25, 2013 with respect to services in International Class 040.

26.     On March 25, 2015, Spicher was granted Pennsylvania Trademark Registration No. 3343509 ("the '509 Registration") for THE ARTWORK FACTORY mark in relation to art pictures, framed art pictures, art pictures on canvas, art prints, framed art prints, art prints comprised of digital illustrations originating from photographs, graphic art prints, framed graphic art reproductions, photographs, photographs that have been computer manipulated and enhanced to look like paintings, mounted and unmounted photographs, printed paper signs, art

prints on the reverse side of acrylic, art prints on the reverse side of glass, in International Class 016.  A true and correct copy of the '509 Registration is attached hereto as Exhibit "A."

27.   On March 25, 2015, Spicher was granted Pennsylvania Trademark Registration No. 3343508 ("the '508 Registration") for THE ARTWORK FACTORY mark in relation to vinyl flooring, in International Class 019.  A true and correct copy of the '508 Registration is attached hereto as Exhibit "B."

28.   On March 25, 2015, Spicher was granted Pennsylvania Trademark Registration No. 3343507 ("the '507 Registration") for THE ARTWORK FACTORY mark for floor cloths in the nature of floor coverings, in International Class 027.  A true and correct copy of the '507 Registration is attached hereto as Exhibit "C."

29.   On March 25, 2015, Spicher was granted Pennsylvania Trademark Registration No. 3343506 ("the '506 Registration") for THE ARTWORK FACTORY mark with respect to alteration and retouching of photographic images and artwork, in International Class 040.  A true and correct copy of the '506 Registration is attached hereto as Exhibit "D."

30.   On March 25, 2015, Spicher was granted Pennsylvania Trademark Registration No. 3343505 ("the '505 Registration") for THE ARTWORK FACTORY mark with respect to graphic arts design, custom design and

development of artwork, in International Class 042.  A true and correct copy of the

'505 Registration is attached hereto as Exhibit "E."

## **Defendant's Infringing Conduct**

31.    Defendant was organized in the Czech Republic on June 12, 2013, at

least 18 months after Spicher began using THE ARTWORK FACTORY in

commerce.

32.    Defendant is the registrant of the domain the-artwork-factory.com,

and uses that domain to sell goods that are identical or substantially similar to the

goods offered by Spicher.

33.    Defendant registered the-artwork-factory.com on August 28, 2013,

more than 18 months after Spicher began using THE ARTWORK FACTORY in

commerce   and   more   than   two   years   after   Spicher   registered

theartworkfactory.com.

34.    Defendant knew of Spicher's use of THE ARTWORK FACTORY at

least as early as November 23, 2013.

35.    In addition to advertising and selling products similar to Spicher's at

the-artwork-factory.com Defendant also sells its products through various

distributors, including Wayfair.

36.    Defendant advertises, offers and sells its products in the United States

and in the Middle District of Pennsylvania and, upon information and belief, ships

its products to customers from 109 Henderson Street, Pittsburgh, Pennsylvania 15235, and therefore conducts business in the United States and in Pennsylvania.

37.     Defendant's conduct has been intentionally and purposefully directed by Defendant to the Middle District of Pennsylvania and has had a significant effect on Spicher in the Middle District of Pennsylvania.

38.     On December 10, 2013, Spicher contacted a representative of Wayfair to request that Wayfair update its website to reflect Spicher's trade name as "The Artwork Factory" (rather than the trade name previously used by Spicher with respect to sales by Wayfair, "Blueprint Artwork") and to offer and sell Spicher's products using the mark THE ARTWORK FACTORY.

39.     Wayfair agreed to update its website to reflect Spicher's trade name as "The Artwork Factory" and to offer and sell Spicher's products using the mark THE ARTWORK FACTORY.

40.     Without updating its website as agreed, in or around September 2014, Wayfair entered into an arrangement with Defendant whereby Wayfair would offer and sell Defendant's products at Wayfair's website using the mark THE ARTWORK FACTORY.

41.     Despite that Wayfair was aware that Spicher had already been using THE ARTWORK FACTORY in commerce for over two years, in or around September 2014, Wayfair began to sell and offer to sell Defendant's products

under  THE ARTWORK FACTORY mark.

42.     Within weeks of its agreement with Defendant, on September 29, 2014, Wayfair notified Spicher that it would not permit Spicher to use THE ARTWORK FACTORY to offer and sell goods at Wayfair because Defendant was using that name to offer and sell goods at its site.

43.     As of the filing date of this Complaint, Wayfair continues to offer and sell Defendant's products under THE ARTWORK FACTORY mark.

44.     Defendant's infringement of Spicher's mark has caused Wayfair employees to be confused about the source of Spicher's and Defendants' respective goods.

45.     On or about October 20, 2014, Spicher discovered that Wayfair provided to Defendant sales records regarding as many as 235 orders of Spicher's products by Wayfair customers.

46.     Wayfair's diversion of Spicher's orders to Defendant resulted in delays to Spicher's ability to fulfill orders and satisfy its customers, and allowed Defendant to gain information about Spicher's sales and customers that should not have been available to Defendant.

47.     On or about November 12, 2014, Wayfair provided Defendant access to Spicher's Wayfair account, including information about all of Spicher's products distributed by Wayfair, details of orders placed with Wayfair for

Spicher's products and contact information for purchasers of Spicher's products.

48.     The information made available to Defendant regarding Spicher's products, orders and customers is sensitive, non-public and confidential information that comprises trade secrets of Spicher and that Spicher has not authorized Wayfair to disclose or Defendant to access.

49.     Upon information and belief, Defendant has used Spicher's sensitive, non-public and confidential information for its own benefit and to the detriment of Spicher.

50.     Wayfair's disclosure of information to Defendant constitutes a breach of the Supplier Agreement executed on or about June 14, 2012 between Spicher and Wayfair.

51.     On March 27, 2015, Spicher contacted Wayfair to again request that Wayfair refrain from sharing Spricher's confidential information with Defendant and requested confirmation that Wayfair has taken steps to prevent Defendant from accessing Spicher's sales data.

52.     As of the filing of this Complaint, despite requests from Spicher, Wayfair has not terminated Defendant's access to Spicher's sensitive, non-public and confidential information in Spicher's Wayfair account.

53.     Upon information and belief, Defendant continues to use Spicher's sensitive, non-public and confidential information for its own benefit and to

Spicher's detriment.

54.     Despite repeated requests from Spicher, Wayfair has not updated its website to reflect Spicher's trade name as "The Artwork Factory" and to offer and sell Spicher's products using the mark THE ARTWORK FACTORY.

55.     Wayfair continues to offer and sell Spicher's products, but does so using Spicher's previous trade name "Blueprint Artwork."

56.     Wayfair continues to offer and sell Defendant's products using the mark THE ARTWORK FACTORY.

57.     Upon information and belief, Defendant caused or induced Wayfair to refuse to update its website to reflect Spicher's trade name as "The Artwork Factory," caused or induced Wayfair to refuse to offer and sell Spicher's products using the mark THE ARTWORK FACTORY and caused or induced Wayfair to offer and sell Defendant's identical or similar goods using THE ARTWORK FACTORY.

58.     A consumer viewing Defendant's products offered and sold by Wayfair would likely believe that those products originate from or are approved by Spicher because Spicher's trade name and trademark is used by Wayfair, at Defendant's direction, in connection with the offer and sale of goods that are identical or similar to Spicher's.

59.     On January 6, 2014, Erik Robinson, a representative of Defendant,

notified Spicher by email that Defendant had received an email from a customer of Spicher and that Spicher was the intended recipient of that email. A true and correct copy of the January 6, 2014 correspondence from Erik Robinson is attached hereto as Exhibit "F."

60. The January 6, 2014 correspondence from Erik Robinson does not include any demand for Spicher to cease and desist from using THE ARTWORK FACTORY mark.

61. On May 2, 2014, Defendant applied to register THE ARTWORK FACTORY as a trademark in the Czech Republic (Application No. 513293) for use on (i) watercolors (paintings), paintings (pictures) framed or unframed, paintings, posters and photographs (printed) paper products (International Class 016); (ii) photography (International Class 041); and (iii) design (artistic) (International Class 042).

62. Defendant's application to register THE ARTWORK FACTORY in the Czech Republic was approved and the registration (Registration No. 341227) was issued on October 8, 2014.

63. On October 22, 2014, Defendant applied to register THE ARTWORK FACTORY as a Community Trade Mark with the European Union Office of Harmonization of the Internal Market (Application No. 013393913) for use on the same goods set forth in the application filed by Defendant in the Czech Republic.

64.     As of the filing of this Complaint, Defendant's application to register THE ARTWORK FACTORY as a Community Trade Mark has not been approved and no registration has issued.

65.     On October 24, 2014, long after Defendant became aware of Spicher's use of THE ARTWORK FACTORY mark, Defendant filed a Request for Extension of Protection with the USPTO seeking to register THE ARTWORK FACTORY (Serial No. 79160800) for use on the same goods set forth in the application filed by Defendant in the Czech Republic ("Defendant's Request for Extension").

66.     Defendant's Request for Extension was filed pursuant to §66(A) of the Lanham Act, providing for the registration of marks in the United States pursuant to the Madrid Protocol.

67.     On January 22, 2015, Defendant's representative, Erik Robinson, contacted Spicher's counsel via email to demand that Spicher cease and desist from using THE ARTWORK FACTORY.  A true and correct copy of the January 22, 2015 correspondence from Erik Robinson is attached hereto as Exhibit "G."

68.     Spicher adopted and used THE ARTWORK FACTORY as a trademark in interstate commerce in the United States well before Defendant's earliest claimed priority date in Defendant's Request for Extension.

69.     Because Spicher used THE ARTWORK FACTORY in commerce in

the United States well before Defendant used that mark in the United States and well before Defendant's claimed priority date, Spicher's rights in the mark are superior to any rights of Defendant.

70.    On January 30, 2015, Spicher's counsel responded to the January 22, 2015 correspondence from Erik Robinson by denying that Defendant's rights to THE ARTWORK FACTORY are senior to Spicher's rights and demanding that Defendant cease and desist from using THE ARTWORK FACTORY in the United States.   A true and correct copy of the January 22, 2015 correspondence from Spicher's counsel is attached hereto as Exhibit "H."

71.    In addition to using THE ARTWORK FACTORY at Wayfair and at the-artwork-factory.com, Defendant uses THE ARTWORK FACTORY to market its products on Twitter and on other websites.

72.    On Defendant's Twitter profile, Defendant claims that THE ARTWORK FACTORY is a registered trademark in the United States by using the ® symbol immediately after THE ARTWORK FACTORY.

73.    Defendant's use of the ® symbol is misleading and deceptive, as Defendant is not the registrant of THE ARTWORK FACTORY mark in the United States (or anywhere in the world outside of the Czech Republic).

74.    The use of the ® symbol by Defendant on its Twitter profile is likely to cause confusion among viewers of that profile because it implies that Defendant

has the right to use THE ARTWORK FACTORY in the United States -- which it does not -- and suggests a connection or affiliation with Spicher, the legitimate owner of that mark.

## COUNT I

### FEDERAL UNFAIR COMPETITION AND
### COMMON LAW TRADEMARK INFRINGEMENT
### LANHAM ACT §43(A)

75.     The averments of Paragraphs 1 through 74 above are incorporated herein by reference as if set forth in their entirety.

76.     Spicher is the owner of all right, title and interest in the trademark THE ARTWORK FACTORY.

77.     As of the filing of this Complaint, Spicher has applied for a federal trademark registration for THE ARTWORK FACTORY.

78.     Spicher has used THE ARTWORK FACTORY as a trademark in interstate commerce since at least August 10, 2011.

79.     Spicher was the first party to adopt THE ARTWORK FACTORY and to use that mark in commerce.

80.     Since at least August 28, 2013, Defendant has used THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto (including but not limited to ARTWORK-FACTORY), in interstate commerce in the United States and in Pennsylvania in connection with its sale of wall art, coffee and

cocktail tables, area rugs and other products.

81.   Defendant's use of THE ARTWORK FACTORY is a false designation of origin, false or misleading description of fact, or false or misleading representation of fact as used in connection with the offer and sale of Defendant's products.

82.   Defendant uses THE ARTWORK FACTORY in commercial advertising or promotion to misrepresents the nature, characteristics, qualities and origin of its goods and commercial activities.

83.   Defendant's use of THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto has caused and is likely to continue to cause confusion or mistake about the source of Defendant's goods in that a consumer is likely to believe that Defendant's goods and services are offered by Spicher or vice versa.

84.   Defendant's use of THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto has caused and is likely to continue to cause mistake or deception as to the origin and source of Defendant's goods and services in that a consumer is likely to believe that Defendant's goods originate from Spicher or vice versa.

85.   Defendant's use of THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto has caused and is likely to continue to

cause and mistake or deception as to the affiliation, connection or association of Defendant's goods and services in that a consumer is likely to believe that there is some affiliation, connection or association between Defendant and Spicher that does not exist.

86.    Defendant's use of THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto has caused and is likely to continue to cause mistake or deception as to sponsorship or approval of Defendant's goods and services in that a consumer is likely to believe that Spicher has sponsored or approved Defendant's goods and services.

87.    Defendant's use of THE ARTWORK FACTORY or a mark substantially and confusingly similar thereto has caused at least two instances of actual confusion by a consumer, and is likely to continue to cause confusion if Defendant is permitted to continue using such mark.

88.    Defendant's use of THE ARTWORK FACTORY or a mark substantially similar thereto is likely to create confusion because of, among other things, the similarity of the goods and services offered by Defendant and Spicher and the common trade, marketing and distribution channels in which the parties' respective goods and services are offered and sold.

89.    Defendant's use of THE ARTWORK FACTORY constitutes infringement of Spicher's rights in the mark THE ARTWORK FACTORY.

90.     Defendant's use of THE ARTWORK FACTORY constitutes unfair competition with Spicher.

91.     Defendant is liable to Spicher pursuant to the Lanham Act, including but not limited to 15 U.S.C. §1125(a), for its infringing use of THE TRADEMARK FACTORY and its unfair competition.

92.     Spicher has suffered damages of at least $75,000.00 as a result of Defendant's trademark infringement and unfair competition.

## COUNT II

### VIOLATION OF ANTICYBERSQUATTING CONSUMER PROTECTION ACT 15 U.S.C. §1125(d)

93.     The averments of Paragraphs 1 through 92 above are incorporated herein by reference as if set forth in their entirety.

94.     Defendant registered the domain the-artwork-factory.com on August 28, 2013, at which time Spicher had been using the mark THE ARTWORK FACTORY in commerce for more than 18 months, including but not limited to use at Spicher's domain, theartworkfactory.com.

95.     At the time Defendant registered the-artwork-factory.com, Spicher was the owner of the trademark THE ARTWORK FACTORY.

96.     At the time Defendant registered the-artwork-factory.com, THE ARTWORK FACTORY had become a distinctive mark.

97. At the time it registered the-artwork-factory.com, Defendant knew that Spicher was the owner of the mark THE ARTWORK FACTORY and that Defendant had no right, title or interest in that mark.

98. At the time Defendant registered the-artwork-factory.com, Spicher's business had become known as "The Artwork Factory" and Spicher had registered "The Artwork Factory" as a trade name on November 21, 2011 with the Pennsylvania Department of State, Bureau of Corporations and Charitable Entities.

99. Defendant's domain the-artwork-factory.com is identical to Spicher's mark THE ARTWORK FACTORY, except for the inclusion of hyphens in Defendant's domain, and incorporates the entirety of Spicher's mark.

100. Defendant's use of hyphens in its domain the-artwork-factory.com does not cure Defendant's infringing use of Spicher's mark THE ARTWORK FACTORY and does not serve to avoid customer confusion and deception.

101. Despite that Defendant's domain name includes hyphens, its infringing uses of the mark, in the content of its website and elsewhere, does not include hyphens and is identical to Spicher's mark THE ARTWORK FACTORY.

102. Defendant's use of the domain the-artwork-factory.com is entirely commercial, and Defendant uses that domain to offer and sell products that are similar to those offered by Spicher at theartworkfactory.com and in other locations using the mark THE ARTWORK FACTORY.

103.   Defendant's use of the-artwork-factory.com is not a fair use.

104.   Defendant registered and uses the-artwork-factory.com for the purpose of intentionally diverting consumers from Spicher's website at theartworkfactory.com to Defendant's own website that offers and sells goods in competition with Spicher.

105.   Defendant's diversion of consumers from theartworkfactory.com to the-artwork-factory.com harms the goodwill represented by Spicher's mark THE ARTWORK FACTORY.

106.   Defendant's registration and use of the-artwork-factory.com is for the purpose of or results in commercial gain to Defendant.

107.   By registering and using the-artwork-factory.com, Defendant has intentionally tarnished or disparaged Spicher's mark THE ARTWORK FACTORY by creating a likelihood of confusion as to the source, sponsorship, affiliation or endorsement of Defendant's website and the goods offered and sold on Defendant's website.

108.   Defendant's registration and use of the-artwork-factory.com was motivated by a bad faith attempt to profit from Spicher's mark THE ARTWORK FACTORY.

109.   Upon information and belief, Defendant did not use THE ARTWORK FACTORY or any mark similar thereto for a bona fide offering of goods and

services prior to its registration of the-artwork-factory.com.

110. Defendant's registration and use of the-artwork-factory.com has caused confusion among consumers and has caused consumers to be diverted away from Spicher's website and instead to the website operated by Defendant.

111. Spicher has suffered damages of at least $75,000.00 as a result of Defendant's registration and use of the-artwork-factory.com.

112. Spicher is entitled to recover Defendant's wrongfully gained profits and Spicher's damages, or statutory damages of not less than $1,000.00 and not more than $100,000.00, plus attorneys' fees and costs.

113. Spicher is entitled to an injunction prohibiting Defendant to use the domain the-artwork-factory.com.

114. Spicher is entitled to an order requiring Defendant to transfer the domain the-artwork-factory.com to Spicher or to cancel or forfeit the registration of that domain.

## COUNT III

**PENNSYLVANIA REGISTERED TRADEMARK INFRINGEMENT**
**54 PA.C.S. §1123**
**PENNSYLVANIA TRADEMARK REGISTRATION NO. 3343507**

115. The averments of Paragraphs 1 through 114 above are incorporated herein by reference as if set forth in their entirety.

116. This claim arises pursuant to 54 Pa.C.S. §1123 for infringement of

THE ARTWORK FACTORY mark set forth in the '507 Registration.

117.   THE ARTWORK FACTORY mark set forth in the '507 Registration is a valid, legally protectable and enforceable trademark.

118.   Spicher is the owner of the mark set forth in the '507 Registration and has rights superior to any rights Defendant may have in THE ARTWORK FACTORY.

119.   Consumers associate THE ARTWORK FACTORY mark set forth in the '507 Registration with Spicher as the single source of goods offered in connection with THE ARTWORK FACTORY mark.

120.   Spicher has not given Defendant consent, permission or license to use THE ARTWORK FACTORY mark.

121.   Defendant's use of THE ARTWORK FACTORY mark in connection with graphic rugs and area rugs creates a likelihood of confusion, mistake or deception among consumers regarding the source or origin of Spicher's products.

122.   Upon information and belief, Defendant knew of Spicher's prior use of THE ARTWORK FACTORY mark, and intended to trade on and did trade on, and intends to trade on and will continue trade on the extensive goodwill established by Spicher in THE ARTWORK FACTORY mark.

123.   Defendant's wrongful acts alleged herein violate Spicher's rights pursuant to 54 Pa.C.S. §1123, and, upon information and belief, have been

deliberate, willful and in disregard of Spicher's rights.

124.   Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn substantial revenues and profits on the strength of Spicher's mark.

125.   By reason of Defendant's wrongful acts alleged herein, Spicher has suffered and continues to suffer damage to its business, trade, reputation and goodwill as a result of the erroneous perception that the products offered by Defendant are affiliated with, sponsored by, approved by or originate from Spicher.

126.   Defendant's trademark infringement alleged herein has caused losses to Spicher of at least $75,000.00.

127.   Defendant must be required to disgorge its wrongfully gained profits, pay monetary damages to Spicher and be enjoined from continuing to use THE ARTWORK FACTORY in Pennsylvania.

## COUNT IV

**PENNSYLVANIA REGISTERED TRADEMARK INFRINGEMENT
54 PA.C.S. §1123
PENNSYLVANIA REGISTRATION NO. 3343509**

128.   The averments of Paragraphs 1 through 127 above are incorporated herein by reference as if set forth in their entirety.

129.   This claim arises pursuant to 54 Pa.C.S. §1123 for infringement of

THE ARTWORK FACTORY mark set forth in the '509 Registration.

130.   THE ARTWORK FACTORY mark set forth in the '509 Registration is a valid, legally protectable and enforceable mark.

131.   Spicher is the owner of the mark set forth in the '509 Registration and has rights superior to any rights Defendant may have in its identical THE ARTWORK FACTORY mark.

132.   Consumers associate THE ARTWORK FACTORY mark set forth in the '509 Registration with Spicher as the single source of goods offered in connection with THE ARTWORK FACTORY mark.

133.   Spicher has not given Defendant consent, permission or license to use THE ARTWORK FACTORY mark.

134.   Defendant's use of THE ARTWORK FACTORY mark in connection with graphic art plaques, graphic art, graphic art on canvas, graphic circular art, graphic art on glass and coffee tables creates a likelihood of confusion, mistake or deception among consumers regarding the source or origin of Spicher's products.

135.   Upon information and belief, Defendant knew of Spicher's prior use of THE ARTWORK FACTORY, and intended to trade on and did trade on, and intends to trade on and will continue to trade on the extensive goodwill established by Spicher in THE ARTWORK FACTORY mark.

136.   Defendant's wrongful acts alleged herein violate Spicher's rights

under 54 Pa.C.S. §1123, and, upon information and belief, have been deliberate, willful and in disregard of Spicher's rights.

137.   Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn substantial revenues and profits on the strength of Spicher's mark.

138.   By reason of Defendant's wrongful acts alleged herein, Spicher has suffered and continues to suffer damage to its business, trade, reputation and goodwill as a result of the erroneous perception that the products offered by Defendant are affiliated with, sponsored by, approved by or originate from Spicher.

139.   Defendant's trademark infringement alleged herein has caused losses to Spicher of at least $75,000.00.

140.   Defendant must be required to disgorge its wrongfully gained profits, pay monetary damages to Spicher and be enjoined from continuing to use THE ARTWORK FACTORY in Pennsylvania.

## <u>COUNT VI</u>

## **PENNSYLVANIA COMMON LAW TRADEMARK INFRINGEMENT**

141.   The averments of Paragraphs 1 through 140 are incorporated herein by reference as if set forth in their entirety.

142.   THE ARTWORK FACTORY is a valid, legally protectable and enforceable common law trademark pursuant to Pennsylvania law.

143.   Spicher is the exclusive owner of common law trademark rights in THE ARTWORK FACTORY pursuant to Pennsylvania law and is the registrant of the trade name "The Artwork Factory" in Pennsylvania.

144.   As Spicher's trademark and registered trade name, THE ARTWORK FACTORY is recognized by the public as identifying Spicher's goods and distinguishes Spicher's goods from the goods of others.

145.   Defendant, without Spicher's consent or license, has used THE ARTWORK FACTORY in Pennsylvania and elsewhere in a manner that has caused confusion among consumers and is likely to continue to create confusion among consumers.

146.   Defendant's use of THE ARTWORK FACTORY in Pennsylvania and elsewhere is undertaken with the intent by Defendant to pass off its own goods as those of Spicher and/or to deceive consumers into believing that Defendant's goods originate with Spicher or are produced, distributed, marketed, approved, affiliated or sponsored by Spicher.

147.   Defendant's use of THE ARTWORK FACTORY in Pennsylvania and elsewhere constitutes a false designation of origin and a false description or representation.

148.   Since at least January 2014, Defendant has known that Spicher is the owner of the Pennsylvania common law rights to the mark THE ARTWORK FACTORY and the trade name "The Artwork Factory" and knew that its use of that mark in Pennsylvania infringes upon Spicher's common law trademark rights.

149.   Defendant's wrongful acts alleged herein have permitted and/or will permit Defendant to earn substantial revenues and profits on the strength of Spicher's mark.

150.   By reason of Defendant's wrongful acts alleged herein, Spicher has suffered and continues to suffer damage to its business, trade, reputation and goodwill as a result of the erroneous perception that the products offered by Defendant are affiliated with, sponsored by, approved by, or originate from Spicher.

151.   Defendant's infringement of Spicher's trademark and trade name has caused losses to Spicher of at least $75,000.00.

152.   Defendant must be required to disgorge its wrongfully gained profits, pay monetary damages to Spicher and be enjoined from continuing to use THE ARTWORK FACTORY in Pennsylvania.

## COUNT V

## VIOLATION OF PENNSYLVANIA ANTIDILUTION STATUTE
## 54 PA.C.S. §1124

153.   The averments of Paragraphs 1 through 152 are incorporated herein by reference as if set forth in their entirety.

154.   Spicher's Pennsylvania common law mark THE ARTWORK FACTORY is inherently distinctive and famous in Pennsylvania and capable of distinguishing the goods and services offered by Spicher from the products of others.

155.   If THE ARTWORK FACTORY is not inherently distinctive, it acquired secondary meaning in Pennsylvania prior to Defendant's adoption and use of that mark in Pennsylvania.

156.   THE ARTWORK FACTORY has become synonymous with Spicher's products in the minds of a significant portion of consumers and evokes in the minds of those consumers a favorable impression of Spicher and/or Spicher's products.

157.   Defendant's use of THE ARTWORK FACTORY without Spicher's consent or license began after that trademark became distinctive and famous in Pennsylvania.

158.   Defendant's use of THE ARTWORK FACTORY in Pennsylvania is likely to injure Spicher's business reputation and to dilute the distinctive quality of

Spicher's mark THE ARTWORK FACTORY and of Spicher's registered trade name "The Artwork Factory."

159.   Defendant's use of THE ARTWORK FACTORY in Pennsylvania impairs the uniqueness and distinctiveness of Spicher's trademark and trade name.

160.   Defendant's use of THE ARTWORK FACTORY has resulted in a reduction of the capacity of that mark to identify and distinguish goods or services.

161.   Defendant's use of THE ARTWORK FACTORY in Pennsylvania is commercial in nature and is not fair use or otherwise privileged.

162.   Defendant's use of THE ARTWORK FACTORY is willful and is an intent by Defendant to trade on Spicher's reputation and goodwill and/or to cause dilution of that mark.

163.   Spicher's ability to use THE ARTWORK FACTORY to identify its own goods and services has been impaired by Defendant's continuing infringing use of that trademark and trade name.

164.   Defendant's use of THE ARTWORK FACTORY has resulted in that trademark being blurred, as it formerly referred to exclusively to Spicher but now does not.

165.   Defendant's use of THE ARTWORK FACTORY has tarnished that mark and has caused and will continue to cause actual confusion and a likelihood of confusion by consumers.

166.   Defendant's dilution of Spicher's trademark and trade name has caused losses to Spicher of at least $75,000.00.

167.   Defendant must be required to disgorge its wrongfully gained profits, pay monetary damages to Spicher and be enjoined from continuing to use THE ARTWORK FACTORY in Pennsylvania for commercial purposes.

168.   An injunction is the appropriate remedy for Defendant's dilution and injury to Spicher's business or reputation, and is necessary to prevent further harm to Spicher and to Spicher's trademark and trade name.

## COUNT VI

### TORTIOUS INTERFERENCE WITH EXISTING OR PROSPECTIVE CONTRACTUAL RELATIONSHIPS

169.   The averments of Paragraphs 1 through 168 above are incorporated herein by reference as if set forth in their entirety.

170.   Defendant has taken advantage of the confusion caused by its infringement on Spicher's mark THE ARTWORK FACTORY to confuse or deceive Spicher's customers or potential customers and to induce those customers or potential customers to purchase Defendant's products rather than Spicher's products.

171.   Defendant has used sensitive, non-public and confidential information made available to Defendant by Wayfair, including information about all of Spicher's products distributed by Wayfair, details of orders placed with Wayfair

for Spicher's  products and contact information for purchasers of Spicher's products, to interfere with Spicher's existing or prospective contractual relationships with customers or potential customers.

172.   Defendant purposefully, intentionally and improperly used Spicher's sensitive, non-public and confidential information to induce customers or potential customers to purchase Defendant's products rather than Spicher's products.

173.   Defendant's conduct was motivated by a desire to harm Spicher by interfering with Spicher's existing and prospective contractual relations and to benefit from inducing Spicher's customers or potential customers to purchase Defendant's products rather than Spicher's products.

174.   Defendant had no justifiable or legitimate reason to interfere with Spicher's existing and prospective contractual relations, and Defendant's conduct was not privileged.

175.   Spicher has suffered actual damages of at least $75,000.00 as a direct result of Defendant's intentional interference with Spicher's existing and prospective contractual relations.

## COUNT VII

## PENNSYLVANIA COMMON LAW UNFAIR COMPETITION

176.   The averments of Paragraphs 1 through 175 above are incorporated herein by reference as if set forth in their entirety.

177.   By virtue of Defendant's acts alleged herein, Defendant has engaged in conduct that is contrary to hones industrial and commercial practice, and thus, has engaged in unfair competition in violation of Pennsylvania common law.

178.   Defendant's use of THE ARTWORK FACTORY is a false designation of origin, false or misleading description of fact, or false or misleading representation of fact as used in connection with the offer and sale of Defendant's products.

179.   Defendant uses THE ARTWORK FACTORY in commercial advertising or promotion to misrepresents the nature, characteristics, qualities and origin of its goods and commercial activities.

180.   Defendant's use of THE ARTWORK FACTORY is likely to cause confusion or mistake or to deceive as to the affiliation, connection or association of Spicher and Defendant and/or as to the origin, sponsorship or approval of Spicher's and Defendant's respective goods, services and commercial activities.

181.   Defendant's acts alleged herein are calculated to procuring unfair competitive advantage.

182.   Defendant has engaged in the foregoing acts deliberately and willfully with the intent of injuring Spicher.

183.   Defendant will continue to compete unfairly unless restrained by this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff , Mark C. Spicher d/b/a The Artwork Factory respectfully prays that:

1.    The Court enter judgment finding that:

a.    Defendant has violated §43(a) of the Lanham Act, 15 U.S.C. §1125(a);

b.    Defendant has violated the Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d);

c.    Defendant has violated 54 Pa.C.S. §1123 by infringing upon:

   i.    Pennsylvania Registration No. 3343507 and

   ii.    Pennsylvania Registration No. 3343509;

d.    Defendant has engaged in trademark infringement pursuant to Pennsylvania common law;

e.    Defendant has engaged in tortious interference with existing or prospective contractual relationships;

f.    Defendant has engaged in unfair competition pursuant to Pennsylvania common law.

2.    Spicher is entitled to a preliminary and permanent injunction enjoining Defendant and each of its agents, employees, servants, attorneys, successors and assigns, and all others in privity or acting in concert therewith,

from:

     a.    further commercial use of THE ARTWORK FACTORY mark, (either alone or in combination with other words, names or symbols) on or in connection with the advertising, marketing, or offering for sale of art;

     b.    engaging in conduct that falsely represent the origin, sponsorship or approval Defendant's products;

     c.    engaging in conduct that causes or is likely to cause confusion or mistake regarding the origin of Defendant's products or the existence of a sponsorship, association, affiliation or connection between Defendant's and Spicher's respective goods, or that causes the mistaken belief by the public that there a relation, association, affiliation or connection between Spicher and Defendant;

     d.    passing off, or inducing or enabling others to sell or pass off, Defendant's products as those of Spicher;

     e.    interfering with Spicher's prospective and existing contractual relationships, including by using Spicher's confidential sales or customer information;

     f.    unfairly competing with Spicher and engaging in conduct that dilutes the public's recognition of or tarnishes the goodwill in THE ARTWORK FACTORY mark; and

g.      further use of the domain name the-artwork-factory.com and any and all domain names incorporating THE ARTWORK FACTORY or any confusingly similar variation thereof, and requiring Defendant to transfer any and all such domain names owned or controlled by Defendant to Spicher.

3.      Defendant must deliver for destruction or other disposition all products bearing THE ARTWORK FACTORY mark, including all advertisements, promotional and marketing materials;

4.      Defendant file with this Court and serve on Spicher within thirty (30) days after entry of any injunction a report, in writing and under oath, setting forth in detail the manner and form in which Defendant has complied with the injunction;

5.      Awards such other relief as the Court may deem appropriate to prevent consumers, the public and/or participants in the parties' trade and industry from deriving any erroneous impression that any product at issue in this action has been manufactured, imported, advertised, marketed, promoted, supplied, distributed, offered for sale or sold by Defendant, has been approved or authorized by Spicher or is related in any way with Spicher and/or its products;

6.      Awards actual, multiple, exemplary, enhanced, statutory and/or punitive damages, interest and an accounting of and disgorgement of Defendant's

profits, for Spicher's violations of 15 U.S.C. §§ 1125(a) and §1125(d) and 54 Pa.C.S. §1123;

7.    Awards interest, including pre- and post-judgment interest, costs of this action and Spicher's attorneys' fees; and

8.    Provides such other and further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Spicher hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

Dated:  April 2, 2015

By: /s Ryan P. Siney
Ryan P. Siney
2 Lemoyne Drive, Suite 200
Lemoyne, PA 17043
Telephone:  (717) 234-4121
Fax: (717) 232-6802
Email: rsiney@tuckerlaw.com

*Of counsel, motion for admission pro hac vice forthcoming:*

THE KELLER LAW FIRM, LLC

By: /s Kelley C. Keller
Kelley C. Keller
35 East High Street, Suite 204
Carlisle, PA  17013
Telephone: (717) 386-5035
Fax: (800) 971-2979
Email: kkeller@thekellerlawfirm.com